UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Criminal No. 05-30008-MAP |
| v. | ) | |
| RONALD CHARLES, | ) | |
| Defendant. | ) | |

FILED
‑‑‑RK'S OFFICE

2005 OCT 20 P 5: 36

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

The United States of America, by and through its undersigned attorneys, hereby files this Response to Defendant's Motion to Suppress Evidence. The government moves that the motion be denied and relies on the following in support thereof.

I. Facts

Ronald Charles is currently charged in two pending indictments. One indictment charges distribution and possession with intent to distribute cocaine base in the form of crack cocaine (Cr. No. 05-30008-MAP) and the other charges contempt of court for a violation of release conditions (Cr. No. 05-30009). The instant Motion to Suppress and this response are relevant only to Cr. No. 05-30008-MAP. In a previous indictment (Cr. No. 03-30040-MAP) returned on August 23, 2003, Charles was charged with two counts of assault on a federal officer. On August 26, 2004, after a four day jury trial the jury convicted Charles of two counts of assault on a federal officer but found the

1

defendant not guilty of causing the bodily injury to DEA SA John Barron. The defendant was sentenced to 54 months in prison on February 14, 2005.

DEA SA's Jonathan Shankweiler and John Barron were in separate unmarked DEA cars conducting physical surveillance in the Walgreen's parking lot at 700 State Street, Springfield, MA at approximately 3:00 pm on August 4, 2003. During the surveillance the agents made observations across the street at the River Inn Motel which were unrelated to the surveillance which originally caused them to be in the parking lot. The agents observed individuals coming to the motel and leaving within a minute. The agents believed that there was retail narcotics distribution occurring in a hallway at the motel.

The agents drove across the street, got out of their cars and walked up a flight of outdoor stairs. At the time both agents were wearing their DEA badges and firearms on their belts which were visible to the public. As the agents climbed the stairs they saw the defendant on the second floor landing holding a clear plastic bag containing what appeared to be a golf ball sized package of crack cocaine. The defendant was looking at the bag and attempting to tie a knot in the top of the bag and did not notice the agents until they were standing next to him. When the defendant saw the agents he attempted to run. The agents grabbed the defendant's arm and said "police, stop." The

defendant then began to fight the agents who believed the bag contained crack cocaine and were attempting to effect a probable cause arrest.

The defendant used his hands and arms to fight off the agents and struck both agents in the head, face, arms and torso during the fight. The struggle lasted over three minutes. During this time unknown individuals began to surround the agents. It is believed that one of these individuals picked up the plastic bag of crack cocaine because it was never recovered. The agents called the Springfield Police Department for backup. Upon the arrival of the police, the agents were able to handcuff and arrest the defendant. The incident was captured on a motel surveillance camera.

At the conclusion of a detention hearing in August of 2003, over the government's objection, Charles was released on conditions which required him to live with his mother at 86 Alden Street, Springfield and that he not commit any crimes while released. The DEA received several reports that Charles continued to sell crack cocaine from his house but were unable to corroborate those reports. On August 4, 2004, three weeks prior to trial, the Springfield Police Department executed a search warrant at 86 Alden Street. The police had used a confidential informant (CI) to make two controlled purchases of crack cocaine from Keon Gladden at 86 Alden Street in the weeks prior to August

3

4, 2004. Charles was present during the buys, but did not sell the crack.

During the execution of the search warrant Charles was found in a second floor bathroom in the process of cooking crack cocaine and he had a rock of crack cocaine in his pocket. The drugs were sent to the Massachusetts laboratory which found that there was a total of 3.59 grams of cocaine base: 2.03 grams in the bathroom and 1.56 grams found in Charles's pocket. In addition, based upon their training and experience, the agents will testify that all the cocaine base is in the form of crack cocaine.

II. Argument

The defendant argues that the evidence seized from 86 Alden Avenue, Springfield should be suppressed because there was insufficient information set forth in the supporting affidavit which would allow the issuing magistrate to determine that there was probable cause to believe crack cocaine had previously been purchased at that address. Motion at 2. Further, the defendant alleges that the executing agents failed to comply with 18 U.S.C. § 3109, the so-called knock and announce requirement. Motion at 3.

    1.   The Executing Officers Complied with 18 U.S.C. § 3109

The search warrant issued by the state on August 3, 2004 stated the executing officers "are not also authorized to enter

4

the premises without announcement." Search Warrant at 1.

Federal law states that

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109.[1]

As set forth in the police report attached to the defendant's Motion to Suppress, at the same time several police officers were securing several individuals located on the front porch of the residence "a team of Detectives announced our police presence and purpose without response from within the address and then entered through the open front door. Once inside Detectives located a black female sitting on a couch in the living room." Motion to Suppress; attachment p. 11. Here, the front door was open and there was a person in the living room who did not respond. Once the police announced that they were police and were present to execute a search warrant, given the fact that they got no response from the individual inside the apartment,

---

[1] Although this case involves a state court issued search warrant executed by state and local police, because it is being prosecuted in federal court, federal law controls. United States v. Sutherland, 929 F.2d 765, 771 (1st Cir. 1991)(the First Circuit has repeatedly held that federal law controls federal cases in federal court).

5

they were justified in entering with very little or no further delay.

In Miller v. United States, 357 U.S. 301 (1958), the Supreme Court held that § 3109's purpose is to restrict the government's authority to intrude upon the public's privacy and to also protect law enforcement agents who might be mistaken as unlawful intruders if they were to enter a residence unannounced. Further, the Court in United States v. Mendoza, 281 F.3d 712, 717 (8th Cir. 2002), held that entry without knocking was reasonable where police announced their presence and purpose while outside a building, then entered through a doorless entry so there was no unnecessary destruction of private property.

In this case the police officers were on the front porch standing at an open front door looking through the screen door, and announced their "police presence and purpose" [search warrant]. They then entered the house after a short delay without having to break anything. Under these circumstances the purposes of § 3109 are satisfied because it is unlikely that the police would be mistaken for intruders given that they could be clearly seen through the screen door, and there was no destruction of private property.

In circumstances where the police were outside a closed door, the First Circuit has found that minimal delay between knocking, announcing and effecting a forced entry is sufficient.

6

As set forth in the defendant's Memorandum, the Court in <u>United States v. DeLutis</u>, 722 F.2d 902, 909 (1st Cir. 1983) upheld a forcible entry after the officers waited only 20 seconds between knocking and announcing and breaking the door open in a drug trafficking case. The Court held "generally, a wait of 20 seconds is deemed adequate before the officers may force entry." <u>Id</u>. See <u>United States v. Banks</u>, 124 S.Ct. 521, 523 (2003)(holding that 15-20 second pause between knocking and announcing and then entering the building without being admitted was sufficient when there was a belief that exigent circumstances might exist, including fact that it was small apartment and contraband being searched for could be disposed of relatively quickly.) See also <u>United States v. Sargent</u>, 319 F.3d 4, 8-10 (1st Cir. 2003)(knock and announce rule satisfied when officers waited only 5 seconds before forcible entry because defendant known to have knives and possibly a gun and officers reasonably feared for their safety.)

    2.    The Affidavit Contained Probable Cause

The Affidavit submitted on August 3, 2004 in support of the application to search 86 Alden Street, which is attached to the defendant's Motion to Suppress, is three single spaced pages. The affidavit includes information about a confidential reliable informant (CRI) including his basis of knowledge and his past reliability. The affidavit then describes in detail a controlled

7

purchase of crack cocaine by the CRI from Keon Gladden inside 86 Alden Street during the week of July 25, 2004. The controls included searching the CRI before the deal to ensure he did not bring drugs to the deal, and a police officer watching the CRI enter and exit the apartment with Gladden. The affiant stated that after the deal the CRI met the officers and gave them "an item consistent with crack cocaine...". Affidavit at 2.

The affidavit then describes a second controlled purchase of crack cocaine by the CRI from Keon Gladden at 86 Alden Street which occurred within 24 hours of the search warrant application on August 3, 2004. The same controls were used including the affiant watching the CRI enter 86 Alden Street. Again, after the deal the CRI met the officers and gave them what the affiant described as "an off white item consistent with crack cocaine." Id. On both occasions the CRI was debriefed and stated that Gladden handed the CRI "an amount of crack cocaine...". Id. at 2; 3.[2] Based upon the information set forth in the affidavit, the state assistant clerk magistrate issued the search warrant.

Law enforcement agents have probable cause to conduct a search if "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that

---

[2]Contrary to the defendant's assertions, the government was not required to field test the crack cocaine in order to demonstrate to the issuing magistrate that there was probable cause to believe that crack cocaine would be found in the apartment. Motion at 2.

8

contraband or evidence of a crime will be found." <u>Ornelas v. United States</u>, 517 U.S. 690, 696 (1996). Probable cause is a "commonsense, nontechnical conception[] that deal[s] with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" <u>Id.</u> at 695 (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 231 (1983)). Probable cause is a less stringent standard than "more likely than not" or "by a preponderance of the evidence." <u>United States v. Melvin</u>, 596 F.2d 492, 495 (1st Cir. 1979). Probable cause only requires that there be "a fair probability" that contraband or evidence will be found. <u>Gates</u>, 462 U.S. at 238; <u>Moore</u>, 790 F.2d at 15. In determining whether probable cause exists, the court should focus on the events leading up to the search. <u>Ornelas</u>, 517 U.S. at 696.

The First Circuit has described "probable cause" as a "fluid concept" that "'turn[s] on the assessment of probabilities in particular factual contexts,'" <u>Id.</u> (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983)), and that "must be evaluated in light of the totality of the circumstances." <u>Id.</u> (citations omitted). To establish probable cause, the government "need not present the quantum of proof necessary to convict." <u>United States v. Torres-Maldonado</u>, 14 F.3d 95, 105 (1st Cir. 1994)(citation omitted). Rather, "it need only show that, at the time of the arrest, the facts and circumstances known to the arresting officers were

9

sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." Id. Probable cause does not require that all alternative, more innocent explanations be foreclosed. See United States v. Winchenbach, 197 F.3d 548, 555-56 (1st Cir. 1999) ("The probable cause standard does not require the officers' conclusion to be ironclad, or even highly probable. Their conclusion that probable cause exists need only be reasonable."). See also United States v. Sepulveda, 102 F.3d 1313, 1316 (1st Cir. 1996) (holding that there was probable cause to arrest, and therefore search, a defendant who was found inside an apartment from which there were ongoing drug sales, even absent any suspicious activity by the defendant).

In reviewing the state magistrate's finding of probable cause, this Court must "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas, 116 S.Ct. at 1663. In this case, the information set forth in the affidavit provided probable cause to believe that crack cocaine would be found inside 86 Alden Street.

3. The Officers Relied Upon the Search Warrant in Good Faith.

Further, even if the Court finds that the affidavit lacks sufficient probable cause, the good faith exception applies to this case. In United States v. Leon, 468 U.S. 897 (1984), the

10

Supreme Court held that evidence need not be suppressed when police obtain the evidence through objective good faith reliance on a facially valid warrant that is later found to lack probable cause.

If the Court finds that there was insufficient evidence presented to establish probable cause to search, the good faith exception should apply in this case because the "exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of ... judges." Massachusetts v. Sheppard, 468 U.S. at 989, citing Illinois v. Gates, 462 U.S. 213, 263 (1983).

In the present case, the facts and circumstances set forth in the affidavit of Officer Wadlegger clearly established probable cause to believe the relevant state statutes had been violated and that relevant evidence would be recovered inside 86 Alden Street. Therefore, the defendant's Motion to Suppress should be denied.

III. Conclusion

For the above stated reasons, the Court should deny the

defendant's motion to suppress.

>Respectfully submitted,
>
>MICHAEL J. SULLIVAN
>United States Attorney
>
>*/s/ Todd E. Newhouse*
>TODD E. NEWHOUSE
>Assistant United States Attorney

CERTIFICATE OF SERVICE

Hampden, ss.                                Springfield, Massachusetts
                                            October 20, 2005

I, Todd E. Newhouse, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing, via mail to all counsel of record.

>*/s/ Todd E. Newhouse*
>TODD E. NEWHOUSE
>Assistant U.S. Attorney