UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2006 JUN 29  P 12: 41

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                                    ) | Criminal No. 05-30008-MAP |
| ) | June 27, 2006 |
| RONALD CHARLES,              ) | |
| Defendant              ) | |

## SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE

Defendant Ronald Charles submits this memorandum and motion for downward departure setting forth factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

Here the sentence to be imposed should be designed to take account of the gravity of the offense regarding a small quantity of drugs in an amount consistent with personal use and the Court's statutory obligation to punish the defendant for committing the offense and to deter the defendant and others from similar conduct in the future, but at the same time, to recognize that these offenses were committed while the defendant's behavior was affected to a significant degree by Mr. Charles's substance addiction personality disorder and diminished capacity.

## Summary of Argument

I.           On January 12, 2005, the U.S. Supreme Court held that the Sixth Amendment right of jury trial applied to the U.S. Sentencing Guidelines and the

Court then obviated the Sixth Amendment requirement by finding that the Guidelines had to be made advisory. *United States* v. *Booker,* 125 S. Ct. 738 (2005). Now the District Courts are to continue with fact-finding, but are to treat the advisory guideline range as only one of a number of factors to consider in determining a sentence under 18 U. S. C. § 3553(a).

II.       In determining that statutory sentence, courts are bound by the mandate and principle expressed in 18 U.S.C. Section 3553(a): that they impose sentences that are sufficient but not greater than necessary, to comply with the purposes of sentencing expressed in the statute. These purposes are retribution, deterrence, incapacitation, and rehabilitation. The factors that the court are to consider in determining a sentence are the facts relating to the offense and the defendant, the kinds of sentences available, the Sentencing Guidelines Manual, including the (now non-mandatory) guideline range, the need to avoid unwarranted sentencing disparity, and the need to provide restitution where applicable. Whereas neither Section 3553 nor *United States* v. *Booker,* 125 S. Ct. 738 (2005) suggests that anyone of these factors is to be given greater weight than any other factor, it is clear that all of these factors are subservient to Section 3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing. Should this Court decide that the advisory guideline range is the dominating factor, then Mr. Charles objects on the basis that such treatment effectively makes the Guidelines binding again and thus violates his rights under the Sixth Amendment.

III.    In order for a sentence imposed under 18 U. S. C. § 3553(a) to be reasonable, the Court must begin with a correct determination of the guideline range. In addition to the Defendant's Objections raised to the Presentence Report, Mr. Charles further argues that in this case, in calculating the final offense level used to determine the advisory guideline range, the Court should depart down on several bases. First and foremost, the current offense level of 31 severely overstates the seriousness of the offense because (1) the offense level should be designed to take account of the gravity of the offense, in this case regarding a small quantity of drugs, (2) the unusually large adjustments applied under both the statute and the career offender section of the guidelines overstates the seriousness of Mr. Charles criminal history and (3) that Mr. Charles did not personally benefit from the manufacture of cocaine other than to feed his own addiction.

Second, a downward departure is warranted based on the combination of facts including this offense was committed while the defendant's behavior was affected to a significant degree by his diminished capacity and that he suffers from substance abuse and personality disorders.

IV.    After determining the advisory guideline range, this Court must then determine what sentence is appropriate under Section 3553. Mr. Charles first argues that this Court is not limited in what mitigating factors it may consider. In light of the factors expressed in Section 3553, Mr. Charles argues that he be sentenced to a term of imprisonment that does not exceed the advisory guideline range he has argued

properly applies. Further, a sentence below the advisory guideline range is warranted.

### Relevant Personal Background

Ronald Charles is a 28-year-old, single man, who pled guilty in United States District Court on 1/17/06 to one count of manufacture, distribution, and possession with intent to manufacture and distribute cocaine base and one count of contempt of court. On August 4, 2004 Mr. Charles was arrested at his home after he was found there "cooking" crack cocaine. He's been incarcerated for the 22 months since his arrest.

Mr. Charles was born and raised in Springfield, Massachusetts, the middle of three children from the union of Patricia and Paul Charles. He also has two half siblings from his mother's subsequent relationship. A 1993 DYS case history reported that Mr. Charles grew up in an area of Springfield known for poverty and high crime. His parents separated when he was about four years old. His father moved shortly afterward to New York with Mr. Charles' older brother. When Mr. Charles was abandoned by his father in, as he portrays it, a powerfully rejecting scene:

> Me and my other brother was at the table and I begged him to let us go with him. He still left us behind. We cried because we wanted to be with him. (Report of Dr. Lester page 3 and 14 attached as Exhibit "A").

According to Patricia Charles, (Defendant's mother) after the breakup the father never provided child support, and visited the two younger children sporadically, only when pressured. The family was frequently forced to move, usually within the same

neighborhood, due to their apartment buildings being condemned because of violations of codes involving lead paint, heating, and plumbing. They were often given little notice, forced to live temporarily in what they described as "welfare hotels."

A year later (age 5) he was sexually abused by an older male. There was a second instance of sexual abuse by a female abuser. He also experienced domestic abuse over a period of about seven years. This apparently came to a head for him around age 10 when he began trying to protect his mother.

> All I could feel back then about it was that I failed. I mean I tried, but I ended up feeling bad and mad. I was always crying and mad at myself and him. I was always scared. I didn't want to lose my mom and I didn't want to get hurt. (Report of Dr. Lester page 3 and 14).

During those same years his mother's crack abuse was out of control, as was their home life.

> People was coming and going smoking crack, having fights, and right there in front of the kids. It wasn't no crack house, but they was selling drugs and people was always smoking there, right in front of my kids. I didn't do nothing for that. I was too far gone myself. [His mother's account Report of Dr. Lester page15]

At age 13 he experienced a major physical trauma. His family was living temporarily at a local hotel, the River Inn. It had a rod-iron gate operated by an electric motor. Mr. Charles and two siblings attempted to run through the opening while the gate was closing. Mr. Charles was able to push his younger sister through the gate and out of harm's way but both sides of the gate closed on his head pinning him behind the ears. He was taken to the Baystate Medical Center Emergency Department, where he

was diagnosed after an MRI with a bilateral skull fracture, a slight enlargement in the natural sutures of his skull, and a mild concussion, with emotional sequel. According to his mother, the "gate" incident left him not only frightened and in pain, but he was "different." (Report of Dr. Lester page 15). Apparently it had a long term effect on his school performance. Subsequent to the head injury, he began experiencing learning and attention problems in school, which had not been identified prior to the trauma. He was distractible, and had difficulty concentrating. Also his mother remembers him being "more physically limited afterward".

Aside from the domestic violence described above, as a child Mr. Charles was exposed to good deal of violence. When he was 13 years old a friend was shot and left bleeding and paralyzed on the ground. "I heard the shot and went running and saw him laying there. I was just standing there and looking. I felt that I couldn't do nothing." His DYS records indicate that subsequent to this incident he became "saddened, fearful, staying close to home." Then a year later his cousin was shot to death by her boyfriend.

Also at age 13 he began abusing alcohol and marijuana. By age 14 he was drinking hard liquor and abusing cocaine, and by age 15 this was daily. When he was 15 "a lady showed us the real thing" and that's when he started smoking crack. By age 17 crack took over totally. Mr. Charles estimates that with the exception of one period of up to five months (January, 2004 to June 2004 was the longest), after release from custody his use of crack cocaine was ongoing, mostly daily. By age 15 he began what has now been a series of arrests, almost all related to his drug abuse.

## Argument

The Courts are now required to impose a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2), after considering:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the kinds of sentences available;

(3)    the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range;

(4)    the need to avoid unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct; and

(5)    the need to provide restitution to any victim of the offense.

18 U.S.C. § 3553(a)(1), (3) thru (7).

### A.    SECTION 3553(A) SENTENCING MANDATE

The basic mandate and overriding principle of Section 3553(a) requires a district court to impose a sentence *"sufficient, but not greater than necessary,"* to comply with the four purposes of sentencing set forth in Section 3553:

(a)    retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide just punishment");

(b)    deterrence;

(c)    incapacitation ("to protect the public from further crimes"); and

(d)    rehabilitation ("to provide the defendant with needed educational or

vocational training, medical care, or other correctional treatment in the most effective manner").

B.    DETERMINING THE APPROPRIATE SENTENCE-CALCULATING THE ADVISORY GUIDELINE RANGE

The first step for sentencing courts is to determine the range prescribed by the guidelines after making such findings of fact as are necessary, and the District Court must consider the *correct* guideline range before imposing a sentence. Accordingly, and in addition to the objections previously raised to the Presentence Report Mr. Charles makes the following arguments regarding the need for a substantial downward departure.

1. The Offense Level Severely Overstates the Seriousness of the Offense

Application note 18(C) of Section 2B 1.1 provides, "There may be cases in which the offense level determined under this guideline substantially overstates the serious of the offense. In such cases, a downward departure maybe warranted." U.S.S.G. § 2B1.I, comment (n. l8(C)).

This is such a case for three reasons. First, the probation officer determined that a 12-level increase must be applied for the career offender status. Though Mr. Charles has a significant criminal record, all but two of his criminal history points stem from his substance abuse problems. Mr. Charles received three points for a 1997 conviction for possession of a controlled substance (PSR at (42). Mr. Charles received two points for a 2000 conviction for assault and battery on a public servant while

8

leading the police on a chase because he had drugs in his possession (PSR at (43) and

Dr. Lester Report at page 7). Mr. Charles received three points for a 2004 assault on

federal officer conviction and one point for an assault and battery on a police officer

(stemming from the same incident based on his arrest on August 4, 2003 for assault

on federal officer . (PSR at (48) & (49). The only criminal history points that do not

involve substance abuse derive from motor vehicle or trespassing charges. (PS at

(44), (45) &(47).

Second, a 188 to 235 month sentence does not adequately address the nature

and the circumstances of the crime committed by the defendant. He was found in

possession of just over three grams of "cooked" or crack cocaine, an amount

consistent with personal use. There was no evidence, either from a confidential

informant used or through the Springfield Police investigation the Mr. Charles was

selling or distributing the crack cocaine. Another person living at the same residence

was the target of the investigation and when the police found Mr. Charles he was

upstairs preparing a small amount consistent with his own use. Mr. Charles did not

profit from the offense in a monetary sense or otherwise; he simply satisfied an

addiction. Given that this offense stemmed from a condition, rather than an effort to

make money through the manufacture and distribution of cocaine, a sentence

significantly less than the 188 to 235 months pursuant to the guidelines would be

sufficient to promote respect for the law and to deter the sort of conduct at issue in

this case.

Though the manufacture of crack cocaine is dangerous, the offense conduct in this case did not constitute a deliberate and intentional effort to harm the public. Addressing the source, Mr. Charles's cocaine addiction, of what has driven this conduct, treatment is the most effective way to protect the safety of the public and a downward departure of the criminal offense level is warranted. To follow the guideline range for this case would go beyond what is needed to serve the purpose of sentencing.  Respect for the law doesn't always mean sending people to prison for as long as you can or as long as the advisory guidelines indicate.

As noted in the report, Mr. Charles acknowledges his drug problem and is committed to obtaining drug treatment to conquer this addiction (PSR at (78)). Based on the nature of the offense and his expressed desire for treatment, Mr. Charles is an obvious candidate for the 500 hour residential drug treatment program offered by the Bureau of Prisons.

2.    Mr. Charles's Criminal History Category Significantly Over-
       RepresentsThe Seriousness Of His Criminal History.

Under U.S.S.G. §4Al.3, Adequacy of Criminal History Category, the sentencing guidelines states:

> "There may be cases where the Court concludes that a
> Defendant's  Criminal History Category significantly over
> represents the seriousness of a Defendant's criminal history
> or the likelihood that the Defendant will commit further
> crimes. The Court may conclude that the Defendant's
> criminal history was significantly less serious than that of
> most Defendants' in the same criminal history category and
> therefore consider a downward departure from the

guidelines."

Mr. Charles's prior record is significantly less serious than that of most persons in the career offender category or in Criminal History Category VI, and a downward departure is warranted. The prior violent records were always committed in concert with some drug activity and involved minor acts of force. PSR at ¶ 131. Mr. Charles committed most of these offenses while suffering from untreated addiction and diminished capacity.

Mr. Charles's career offender status distorts the seriousness of his criminal history. His record is the kind that characterizes a person with serious addiction and mental health issues. He is presently diagnosed as suffering from substance abuse and personality disorders, including Cocaine Dependence in Remission in a Controlled Environment; and Antisocial Personality Disorder. (Dr. Lester also opines while his history of childhood emotional and physical trauma and his use of maladaptive measures to avoid and control anxiety and depression make him a prime candidate for the diagnosis of Post Traumatic Stress Disorder, he does not meet the full criteria for that diagnosis. Report of Dr. Lester, p. 16).

Mr. Charles moves for a departure below the ranges set by the career offender guideline based on the principal set forth in USSG §4 A1.3. Recognizing the inadequacies of the criminal history scoring system, the commission encourage departures where "reliable information" indicates that the criminal history category "significantly over represents the seriousness of the defendant's criminal history or the likelihood that he defendant will commit further crimes." U.S. v. Lindia, 82 F.3d 1154,

1164-65 (1st Cir. 1996). USSG § 4A1.3 departures are "encouraged departures" under

Koon v. U.S., 518 U.S. 81, 135 L.Ed.2d 92, 116 S.Ct. 2035 (1996).

To qualify for this departure, unlike other departures in chapter five (5) of the

USSG, the Court does not have to find that there is something atypical about the record.

Specifically, the Court does not have to find that "there exists an aggravating or

mitigating circumstance of a kind, or to a degree, not adequately taken into

consideration by the sentencing commission." 18 U.S.C § 3553; U.S. v. Lacy, 99 F.Sup.2d

108.

Because of career offender provisions, his guideline range, absent departures, is

188 to 235 months. The defendant's prior offenses were a result of his substance abuse

and personality disorders.

3.  The Advisory Guideline Range

While Mr. Charles does not intend by offering this advisory guidelines

calculation to forfeit any of the objections previously made as to the various

enhancements, both in regard to *Blakely* issues and non *Blakely* issues, the defendant

provides the following calculations in order to assist the Court in determining a more

accurate starting point for sentencing.

Begin with the base offense level of 22 under U.S.S.G. § 2D1.1(a)(3) because the

count of conviction involved more than three grams but less than four grams of

cocaine base.

No specific characteristic enhancements should be added. The Probation

Department proposes an under U.S.S.G. § 2J1.7 for committing the offenses while on

bail . The defendant was charged and has plead guilty to indictment no. 05-30009, contempt of court for disobeying a court order not to commit any federal state or local law while on release or bail, the conduct which formed the basis of indictment No. 05-30008 as described above. To apply an enhancement of + 3 offense level under U.S.S.G. § 2J1.7, would punish Mr. Charles twice for the same conduct.

With credit for acceptance of responsibility (-3), the total offense level would be 19, which when combined with a criminal history category IV, yields a guideline range of 46-57 months. A 47 month sentence adequately addresses the nature and circumstances of the offense itself, manufacturing and possessing a small amount of cocaine base worth perhaps only a few hundred dollors, and the guideline range would be more than adequate to deter others who may be tempted to commit the same crime.

C.        USSG CHAPTER FIVE FACTORS

In determining whether a departure from the guidelines is warranted under 18 U.S.C. § 3663, a sentencing court may consider, any information concerning the background, character, and conduct of the defendant unless prohibited by law. 18 U.S.C. § 3661; USSG § 1B1.4. Where, as in this case, special circumstances are shown by the Defendant, the First Circuit has recognized that a downward departure is necessary to achieve the guideline goal of imposing appropriate sentences. United States v. Carr, 932 F.2d 67,72 (1st Cir 1991.) cert denied, 112 S. Ct. 112 (1991)(Departure is permitted where special circumstances are found).

There are a number of special factors noted above and in the PSR and Dr. Lester's report that transform Mr. Charles's situation into a special one meriting the downward departure. A sentencing court may depart downward where a combination of factors warrants it. See U.S.S.G. § 5K2.0 Commentary (combination of characteristics and circumstances, none of which alone take the case out of heartland, may warrant departure). United States v. Sklar, 920 F.2d 107, 1117 (1st Cir. 1990)("We do not mean to imply that factors, inadequate to warrant departure when taken in isolation, may not in combination suffice to remove a case from the heartland") (citation omitted). The combination of factors that warrants departure here includes Mr. Charles's diminished capacity, his troubled family life and his disadvantaged upbringing.

1.    The Court Should Depart Downward Based On Mr. Charles's Well-Documented Extreme Mental Impairment And Troubled Life

Guidelines used to oblige the Court to consider the case within the rigid framework and that Court discretion is effectively restricted to those confines. If, however, the Court were to find that the situation presented in this case, overall, is not an ordinary one, the Court may depart from the range required by the Guidelines. U.S. V. Rivera, 994 F.2d 942, 946 (1st Cir. 1993).    The rule is one of reasonableness and that "when such unforeseen circumstances arise, the District Court will decide whether to depart and, if so, how much to depart by examining the unusual circumstances and making a judgment about what is appropriate. U.S. v. Skor, 933 F.Supp. 1108 (D.Mass. 1996).

14

In this case the Defendant seeks a departure with respect to the sentence. The defendant's request is based on a number of factors that makes this case "special" and forms the basis for an encouraged departure, as has been characterized in U.S. v. Baron, 914 F.Supp. 660 (D.Mass. 1995).

Mr. Charles has had a long history of emotional, mental and substance abuse, mostly arising out of his troubled childhood and he has never received treatment. Both the PSR and Dr. Lester's report  Mr. Charle's substance abuse was in large part a response to severe psychological problems which have plagued him since his terrifying and traumatic childhood.  There had been a number of environmental stresses including separation from father, violence and cruelty at home, sexual abuse and chronic sense of deprivation caused by his family's poverty that directly contributed to Mr. Charles's condition.

2.      Condition on Date of Offense - Section 5K2.13, Diminished Capacity

A sentence below the applicable guideline range may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense.

Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

For the purposes of this policy statement, the commentary and application note 5K 2.13 states "significantly reduced mental capacity means the defendant, although

convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior, compromising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful.

This policy statement encourages a downward departure when the defendant was suffering at the time from significantly reduced mental capacity not resulting from the voluntary use of drugs or other intoxicants and does not have a criminal history indicating a need for incarceration to protect the public.

The combination of factors that warrants departure include: mental and physical condition, need for specialized treatment; the fact of Mr. Charles chaotic family circumstances, and the extreme disadvantage he grew up under, warrant the Court's consideration and a downward departure under U.S.S.G. § 5K2.0. See Koon v. United States, 116 S.Ct. 2035 (1996) (District Court has broad authority to depart downward on any ground, with the exception of forbidden ground); United States v. Rivera, 994 F.2d 942, 947 (1st Cir.1993).

A sentencing Court may depart for mental and emotional impairments that do not otherwise meet the criteria for diminished capacity under U.S.S.G. § 5K2.13. The language in section 5H1.3, mental and emotional conditions are not normally relevant; indicates that the Commission intended these factors to play a part in some cases, albeit a limited number. See Koon v. United States, 116 S, Ct, 2035 (1996)(district court has broad authority to depart downward on any ground, with the exception of a forbidden ground); United States v. Rivera, 994 F.2d 942, 947 (1st Cir. 1993).

Present Mental Condition:

16

There can be little doubt that Mr. Charles has labored under severe mental impairments that overlap the offense he has plead guilty to. His records reveal he presently meets the criteria for the diagnose of substance abuse and personality disorders, including Cocaine Dependence, in Remission in a Controlled Environment; and Antisocial Personality Disorder. (See Report Dr. Lester dated 6/26/06 attached hereto). Mr. Charles's childhood and upbringing had been characterized by beatings, terror, neglect, abandonment and extreme poverty marked by disturbing , cruel and traumatic events during his life shaped the defendant's present mental condition.

There are a number of special factors noted above and in the PSR that transform Mr. Charles situation into an extraordinary one meriting the downward departure.

D.    DETERMINATION OF THE STATUTORY SENTENCE

1.        Consideration of Other Factors

As stated previously, Section 3553(a) requires a court to heed (among other factors) the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to reflect the seriousness of the offense, promote respect for law, provide just punishment, afford adequate deterrence, protect the public, and provide needed educational or vocational training, medical care, "or other correctional treatment." 18 U.S.C. §§ 3553(a)(1), (2)(A)-(D). Courts must also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In considering the history and characteristics of the defendant, following *Booker,* courts may now appropriately look to individual cases and

circumstances for any other mitigating factors that apply. Importantly, those include previously prohibited or discouraged departure considerations, *Koon v. United States,* 518 U.S. 81, 93-96 (1996), that *Booker* now permits-if not requires-federal courts to weigh again.

A focus on enumerated aggravating factors, but on both enumerated and non-enumerated mitigating factors, fits closely with the statutory command that the sentence in the end be "sufficient, but not greater than necessary" to achieve the goals of sentencing that Section 3553(a) establishes. Congress's requirement is the lowest adequate sentence. The statute forbids an adequate sentence that is higher than it might be. In short, the statute favors mitigation of the sentence, although not depreciation of the crime.

2.        Consideration of Mitigating Factors

Even when no traditional departure is available or granted, a district court may still sentence outside the applicable guidelines range in exercising its discretion under Section 3553 - i.e., in imposing a statutory sentence - without the need to justify the sentence under a "departure" or "heartland" methodology. Put another way, even if this Court does not find that the downward departures requested above are appropriate to consider in determining the advisory guideline range in the first instance, the Court should consider the grounds and supporting facts in determining a statutory sentence.

This is because by statutory requirement, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant]

18

which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. This statutory language overrides the (now-advisory) policy statements in Part H of the Guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors, including a defendant's family ties and responsibilities, and his charitable service.

The Court must therefore still consider the facts giving rise to the departure grounds in determining what sentence is sufficient but not greater than necessary to meet the purposes of sentencing. Accordingly, Mr. Charles incorporates into this section the arguments made above for downward departure to a lower advisory guideline range.

3.    <u>Recommendation for Statutory Sentence</u>

After determining the advisory range, the court must then consider that range as one of the many factors laid out in Section 3553 (a). While the Court must consider all of the facts, it should consider the following in particular. First, the Court must consider the nature and circumstances of the offense. 18 U.S.C. § 3553(a)(1). The nature of the offense in this case is similar to other cocaine addiction cases. The report demonstrates that Mr. Charles engaged in a pattern of destructive behavior that continued unabated until his arrest and detention. Mr. Charles possession of crack cocaine and his involvement were directly related to his addiction. Significantly, the majority of Mr. Charles involvement with the manufacture of cocaine occurred primarily to support his addiction and was cooking a relatively

small amount (just over 3 grams) for personal use.

The report of Dr. Lester demonstrates that Mr. Charles had a difficult childhood, which included the loss of his father who abandon the family and an abused, drug addicted mother (PSR at 67, 76, 78, 79 ). In addition to cocaine, Mr. Charles's substance abuse history includes alcohol, marijuana, and powder cocaine. Based on these circumstances, Mr. Charles presents as an ideal candidate for both drug and mental health treatment.

Second, the Court must consider the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1).  Though Mr. Charles has a significant criminal record, all but two of his criminal history points stem from his substance abuse problems. Mr. Charles received three points for a 1997 conviction for possession of a controlled substance (PSR at (42).  Mr. Charles received two points for a 2000 conviction for assault and battery on a public servant while leading the police on a chase because he had rugs in his possession (PSR at (43) and Dr. Lester Report at  7). Mr. Charles received three points for a 2004 assault on federal officer conviction and one point for an assault and battery on a police officer stemming from the same incident at the based on his arrest on August 4, 2003 for drug charges in Springfield by members of the Drug Enforcement Agency and Springfield Police. (PSR at (48) & (49).  The only criminal history points that do not involve substance abuse derive from motor vehicle or trespassing charges.  (PSR at (44), (45) & (47)).

Third, the Court must consider the need to prevent unwarranted disparity

among defendants who have committed similar offenses. 18 U.S.C. § 3553(a)(6).

In light of the statutory factors and arguments above, Mr. Charles asserts that a sentence which is lower than the advisory guideline range is appropriate in that it is sufficient, but not greater than necessary, to fulfill the purposes of sentencing under the Sentencing Reform Act.

### Conclusion-Disposition Request

Mr. Charles is well aware of the seriousness of the offenses and of the responsibility of the court to impose an appropriate sentence. It would be easy for the court to focus on an accountability and punishment only and simply lock Mr. Charles up in prison, forgetting about him for a number of years and isolating him from the rest of the society. Mr. Charles requests you do not do that.

There are certain variables and mitigating circumstances which require a different approach, an approach which will balance the rehabilitate of interests of Mr. Charles with the societal concerns of punishment, deterrence, cost and safety. Consideration of Mr. Charles's trauma and his substance abuse problem require a different approach and a departure from the advisory guidelines. Mr. Charles has a mental illness, which is treatable and his behavior is manageable.

With credit for acceptance of responsibility (-3), the total offense level would be 19. The Court should depart downward based upon the determination that the career offender status would grossly overstate the seriousness of the defendant's criminal history yielding as outlined in defendants objections to PSR a criminal history category IV. While the defendant has other convictions they do not justify the

imposition of the full sentence called for under the advisory career offender guidelines. The U.S.S.G. offense level 19 with a criminal history category of IV advises a guideline range of 46-57 months. A 47 month sentence adequately addresses the nature and circumstances of the offense itself, manufacturing and possessing a small amount of cocaine base worth perhaps only a few hundred dollars and the guideline range would be more than adequate to deter others who may be tempted to commit the same crime.

From that starting point the Defendant requests that under the criteria set forth in 18 U.S.C. § 3553 the court consider Mr. Charles suffered severe psychological injury as a young child and the prospects for rehabilitation and depart downward to impose a reasonable sentence considering the possession of a small amount of cocaine base and the defendant's desire to rehabilitate himself.

For all of the foregoing reasons, Mr. Charles requests that the Court depart downward and impose a reasonable sentence, with suitable conditions to ensure that he receives the mental health treatment and substance abuse counseling he requires.

RESPECTFULLY SUBMITTED,
THE DEFENDANT

Dated: June 28, 2006

By: _____
BERNARD T. O'CONNOR, JR.
His Attorney
BBO No. 557879
1391 Main Street - Suite 1022
Springfield, MA 01103-1610
(413) 781-5311

I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED UPON
(EACH PARTY APPEARING PRO SE AND)
THE ATTORNEY OF RECORD FOR EACH
OTHER PARTY BY MAIL BY HAND ON
_____6/28/06_____
_____
Signature

22

EXHIBIT A
(Report of Dr. Lester dated June 26, 2006)

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

## CLERK'S NOTICE

The image of this document is not viewable because it is either SEALED or filed EX PARTE.